Thank you, Your Honor. May it please the court, Brendan Leary for the appellate, Mr. Walton. We're asking the court, we've raised three issues in our brief. The first one was whether the sentence that was imposed by the district court is plainly unreasonable. We argue that it is for four reasons. The first one is the fact that the district court never reviewed with Mr. Walton, who was proceeding pro se, the violations in the petition. It was a lengthy petition followed by another lengthy amended petition that added an additional charge. Although Mr. Walton advised the district court that he wanted to proceed pro se, we are arguing and think that the district court, the better course would have been for the district court to have reviewed each one of them. I think that the petition and the amended petition were a little confusing. I think that that would have obviated some of the problems that occurred after that with Mr. Walton clearly during the hearing talking about he was guilty of the charges that he pled guilty to in state court in Kansas. There was no discussion about a potential charge or a charge that had potentially been filed in West Virginia and these other matters. We think that if the district court ... I thought maybe the government brought those up, the West Virginia charges in the hearing. Is that right? I don't recall, Your Honor, if the government ... Maybe Ms. Conklin did refer to that when the district court at the end of the hearing gave the government an opportunity to speak. I think that when it comes to the procedural problems that the district court taking Mr. Walton at his word when he was proceeding pro se, I think would have been ... That, in our view, is procedurally unreasonable. It would have been the better course to review each one because then that leads us to the next problem which was the actual calculation of the guideline range under Chapter 7 and the court must take into account the Chapter 7 policy statements. One of the things that the court has to do then is consider the advisory guideline range under Chapter 7. That necessarily requires then the district court to determine what is the violation grade, grade A, B, or C, and their specifics with regard to how a violation is graded. We believe that the district court was proceeding with the assumption that it was a grade A violation. If you look at what Mr. Walton said during the course of the hearing, he believed that it was a grade B violation. The distinction is important because the guideline range for a grade A violation, I believe, is 51 to 63 months, whereas the grade B violation, I think, is 21 to 27, but it's a significant difference. Mr. Walton believed that he had violated a grade B violation because the charge in Kansas that was originally charged, and that was in the first petition, maintained that it was a controlled substance offense. Several months later, when Mr. Walton pleaded guilty in the state court in Kansas, he pleaded guilty to a reduced charge, which was transporting drug proceeds. That doesn't make it a controlled substance offense under 4B1.2. Weren't there two listed in the documents that he got? There were two grade A violations? Yes, Your Honor, there was. That next problem was that based on the investigation when he was stopped in Kansas, there was some communication between the police department in that county and the Ohio County West Virginia authorities. Evidently, a state trooper in West Virginia filed a criminal complaint in the Ohio County Magistrate Court. Those documents were never attached to the petition. The only thing that the probation officer put in the amended petition is this discussion, interestingly, about the West Virginia charges, not from the West Virginia charge, where they could have easily just gone down the street and gotten the criminal complaint. It was referred to in the police documents from Kansas. So, yes, there were two alleged A violations. There was the first charge in Kansas and then the subsequent charge in West Virginia. We argue, though, that even had the district court reviewed those with Mr. Walton, that the West Virginia charge wouldn't have been a grade A violation either, at least at that stage, because he was charged, we think, although I've never seen the documents, with possession with intent to distribute marijuana. Under West Virginia law, if it's charged in the magistrate court, it can't be punishable in excess of a year. So that wouldn't have been a grade A violation either, because that charge wouldn't meet the definition of controlled substance offense under 4B1.2 either. So all of these questions that we have, or that we have, could have been obviated in our view if the district court had read the violations to Mr. Walton, even over his objection, because the transcript's clear, and I was sitting there, and Judge Bailey asked him if he admitted to the violations, and he said yes. So he further asked Mr. Walton if he wanted the petition read to him, and Mr. Walton said no. But I think the subsequent confusion in the hearing and what he talks about is when he says something to the effect of, well, I did that out in Kansas, and I just did that because the police department wanted to seize the money, and I just wanted to come back to West Virginia to face these charges. So there was no grading of the violation. There was no determination of the advisory guideline range. And then the fourth issue that we think was a big problem here is that the district court, when it imposed the sentence, which is the statutory maximum of 60 months, never explained the sentence in any way. The district court just simply said, I find you violated, and I impose that you're committed to the custody of the Bureau of Prisons for a period of 60 months. And that was it. Did Mr. Walton argue for any lesser sentence or different sentence? Did he make any argument on any of the factors for why it should be different? I don't think he did, Your Honor. I think he was more involved in this Surratt case, that he wanted to preserve the air for that, and I think knowing Mr. Walton, as I do, and his history, I think that he was puffing with the district court and trying to convince the district court that he was one of these experienced and all-knowing jailhouse lawyers. So there weren't any arguments from the defendant that the court needed to respond to? In terms of the precise sentence to impose, no, I don't think so. That's usually plain error. I know we're already plain error, I guess, when we're in the revocation, but we're a different brand of it, I guess. Correct. And we think that the fact that the district court never explained anything was a plain and obvious error. So the procedural errors here . . . Well, the court did. I mean, don't we have to take . . . There wasn't much said, you know, but don't we have to look at the whole context, right? And the court said, this is what your four convictions, four federals, you've only been out of prison about six years, your whole adult life, and you don't, quote, you don't really give an indication of stopping. And Mr. Walton agreed. Well, the court told him you don't have to answer that last one, right? The court said you don't have to agree with the last one. He started talking about bribing more jurors or something. I'd bribe the whole courthouse if I could. Thank you. And that's right. But in terms of the precise sentence, Mr. Walton never actually said, well, Your Honor, I think that I should get 27 months here or I should get something significantly less than 60 months. But the district court did review that, and I think that Mr. Walton has quite a history in the courthouse in Wheeling going back decades and doesn't take a historian to understand all of what happened with his underlying case and his subsequent commutation. So I think the district court, I think, was familiar with his basic history. But in terms of explaining why he did that and why the sentence was imposed, I think that all occurred before the district court imposed the sentence. And the district court didn't say to the effect of, and I'm imposing this sentence because, and as this court has made clear, it doesn't have to be a very long litany. It just has to explain why the court imposed the sentence that it did. And the district court never did that. Which leads me then to the second issue, which kind of dovetails from the first, which is this pro se colloquy and the fact that the district court didn't do anything other than say, Mr. Walton, you want to go pro se. And I think, again, he was confused because he said, I'd like to go pro se. And I think he said, stand by, counsel. And if you'll read the transcript, you can tell that I have talked to the district court judge about what my role was because I was a little unclear as well. And I think that the district court was required, or we think, that the district court erred when it didn't have a more robust and descriptive inquiry about his ability. But before the hearing, appellant filed a notice of his intent to proceed pro se and also had his appointed counsel file a notice of his intent to proceed pro se. So prior to the hearing, there were two instances where he evidenced his intent to proceed pro se. So the hearing would be the third time. He filed a pleading requesting to go pro se. Interestingly, in that pleading, I think, again, supports our argument about reading the violations and advising him in open court on the record about the significance and the implications of going pro se because in that pleading, he talks about he pleaded guilty in state court in Kansas to a grade B violation. And then that makes sense that at the hearing when he says, oh, yeah, I did that out in Kansas. I pleaded guilty out there. So he's a very intelligent man who has spent decades in prison in the law libraries. And there's no doubt that Mr. Walton understands the legal process. However, that doesn't necessarily indicate that he completely understood how the revocation works. He's never been, after 30 some years, this was the first time he'd been released and was now on supervised release. So he did ask in the pleading for the district court to permit him to go pro se. But again, I think there were some errors in his logic in that argument. The government in its response brief said that they think that the standard of review on the second issue about permitting him to waive his right to counsel is an abuse of discretion. And we argued that it was a de novo review. I don't think this court, and I can stand corrected, has held that in a revocation context that the standard of review for the district court granting somebody the ability to go pro se is an abuse of discretion. If this court adopts that, then we believe that either way, either under the abuse of discretion standard or under the de novo review standard, that the district court didn't appropriately do what it was supposed to do here. And the government has cited some briefs from some other, or some cases from some other circuits. And if you look at what the district court in this case did, compared to what the district court did in some of those cases, and the one in particular is the Bolting House case from the Seventh Circuit, the district court judge in that case, at a revocation hearing, explained the violations to the defendant, went through them with the defendant, had an extensive colloquy and asked him questions about did he understand the significance and consequences of going pro se. And in fact, I believe in that case, the district court in the Bolting House case urged the defendant not to go pro se. And that's in stark contrast to what the district court in this case did, which was one sentence, do you want to go pro se. And we think under an abuse of discretion standard that that wasn't enough, that that was an abuse of discretion, even though it's maybe a different standard of review. Aren't there courts that have, I take your point that those courts have applied abuse of discretion. Are there circuits that have applied a de novo review to the pro se counsel question in a revocation hearing? Not that I'm aware of, Your Honor. I only have a few seconds left. We would just simply rely on the Surratt, the argument in the brief about the Surratt opinion. Mr. Walton was very animated at the revocation hearing about preserving that issue. And we've just quoted the concurrence from Judge Wilkinson in that case and are asking the court to find that the district court didn't have jurisdiction once the presidential sentence was commuted. I'm out of time. I'm happy to answer any additional questions. Thank you, Mr. Leary. Ms. Conklin. Good morning. May it please the court, my name is Jennifer Conklin and I represent the United States. This is a very unconventional defendant in an unconventional hearing with very conventional violations. This defendant, as the record reflects. Violations by whom? I'm sorry? You said violations, the judge's violations or who? Violations by the defendant. Oh, you mean charge, okay. The supervised release violations. Okay. Yes. And it was an unconventional hearing. As the court can tell by reviewing the transcript, Mr. Walton is a very animated person. And he has very headstrong and when he wants to do something, he does it. And I'm sure the court can notice that from just reviewing the transcripts of this case. Well, could you start with the grade A violations? Grade A violations. Yes, your honor. Was that correct? There were two grade A violations in the affidavit. The court never specifically went into classifying what the grade A violations were. In that era? I mean, that's what you, if you're there for a revocation, that's a big deal. Isn't it? A grade A versus B versus C. I mean, that's the, I mean, that is like. Your honor. That's quintessential. I mean, so that's. And in this case, your honor, again, this is a very unconventional hearing and a very unconventional defendant. You said that, but we try to have conventional proceedings in federal courts. So what I'm saying is that that was important to get it right. That the grade is like the charge. It's like going and saying, well, you're charged with this, but we're not going to figure out what your maximum sentence is. Was that properly, did he have grade A violations? Yes, your honor. He did have grade A violations. I just want you to explain and respond to Mr. Leary. Leary said it was not. He had a grade A violation because he was charged in West Virginia court with possession with intent to distribute marijuana. And that's actually referenced in the violation, the affidavit of violation at page 93, where it specifically says that charges were pursued in the state of West Virginia, in Ohio County, West Virginia, for possession with intent to distribute marijuana. He was found with 13.5 pounds of marijuana in his residence. And I think. That's not the end, though, is it? Then it has to match whether or not these are qualifying convictions, right? No, your honor. But I think what we have to, I think the thing that's important. I want you to respond to Mr. Leary's argument. It was very specific. He laid out in his brief and everything. He said that these didn't match. In terms of you matched them, it has to be certain. And actually. I want you to respond. Actually, your honor, they do match. They do match. They do match. Because it's marijuana? Your honor, if you look at the five new law offenses listed in the affidavit, and when you review the factual recitations within the affidavit, it says five new law violations. The first is speeding in Missouri. The second is unlawful invest in an item intended for drugs, speeding, and display of a license plate from Kansas. The fifth violation, or the fifth new law violation, is West Virginia possession with intent to distribute marijuana. And those are the specific five law violations that are pending against the defendant. And that's the actual order that they're expressed in the affidavit. It would be JA037, where it talks about new law violation. New law violation. The first four. I'm sorry. One, two, three, four, five new law violations. The mandatory condition that he shall not possess controlled substance in violation of a condition of supervision, number one. So those first five are the first five violations that are listed in those four paragraphs. Starting with the first offense was the Missouri Highway Patrol speeding. That's the first line of the affidavit. So they aren't explicitly stated new law violation, colon, speeding. But if you actually track the actual language that's in the petition, that it matches up with the type of violations as well. So if you reference at that point the violation worksheet, commission of a new offense, speeding, C, and then you match up the other violations when you get to commission of a new offense, which would be the West Virginia possession of 13.5 pounds of marijuana with intent to distribute, that would be an A violation. And it's an A violation because of what? Because it's a controlled substance. Because it's a controlled substance. Yes, Your Honor. Punishable by more than a year. Was it? Yes. Categorically? Yes. But counsel says not. If he was charged with misdemeanor possession of marijuana, but that does not appear to be what he's charged with. He's charged with possession of marijuana with intent to distribute. And he was convicted of that? No, Your Honor. He was not convicted of it. He was charged with it. He wanted to come to Northern District of West Virginia and make his Surratt argument, which is, again, what he said in the transcript, which is why he wound up just pleading and forfeiting all his money in Kansas because he wanted to get back and make the Surratt argument. In this case, Your Honors, I believe you have to look at the totality of circumstances and the totality of the hearing. I believe that the court was very concise with what the court had said. The court didn't specifically say a whole lot of things about this defendant. But he did say, as I look at it, you've been about out of court. You've been out about six and a half years since you were 26 old. The court also said you don't really give any indication of stopping. You don't have to answer that question. And based on Mr. Walton's admissions, it's the judgment of the court that the defendant is remanded to serve a sentence of 60 months. The other thing that's important, I believe, to look at in this case, Your Honor, is that the charges that the defendant was sentenced to life in prison initially for, conspiracy to distribute marijuana, aiding and abetting in possession with intent to distribute marijuana, and then the other convictions that he received at the time, which was interstate travel to aid in racketeering and money laundering. That's the exact same thing that he was doing when he was arrested this time and when this supervised release violation took place. And I believe that looking at the judge's statements, that's what the judge was aware of. The defendant's history and Mr. Walton's history in the Northern District of West Virginia and Mr. Walton's behavior. The question is, was the sentence reasonable? And I submit that it was reasonable. In this case, the defendant, Mr. Walton, received written notice of the violation. He received a disclosure of the evidence against him. He received, as my friend stated, the affidavit was quite long. The affidavit was quite long because there were so many police reports that were attached to the affidavit. Mr. Walton was given the opportunity to appear, to present evidence, and to question an adverse witness. He was advised of his right to retain counsel, was actually appointed counsel in this case, and rejected counsel because he wanted to make sure that the argument that meant the most to him, that he believed was most important, was made. And he was given the opportunity to make a statement and present evidence and medication. So the rules of criminal procedure have been met. The question is, can we look at the transcript, can we look at the record to see that the court did what it was supposed to do? And I believe when you look at the record as a whole, when you look at the totality of the record as a whole, we can see that the court made its findings, and the court made its decision, and the court made its sentence for specific reasons. Should the court have gone through more of a colloquy with Mr. Walton about his right to counsel? Well, maybe. That would probably make it much easier to review on appeal. But Mr. Walton is a person who presented his CV, basically, to the court, advising the court that he has represented hundreds of people, he's gotten people, you know, clemency. Not just his clemency, but other people's clemency. That he's very familiar with things, and that he spent his entire 30 years in custody in the law library. So this is not your basic generic defendant that's presenting before the court. The other thing is, when an individual makes a statement in court, we need to take that individual statement for what it is. And in this case, the judge asked Mr. Walton, have you had the opportunity to review the affidavit? He said he did, and we need to take his word at face value, unless there's something to say that he's misrepresenting things to the court. But it's not just Mr. Walton's statement in court saying, yes, I've read the evaluation, or read the affidavit, yes, I accept it. But it's the written pleading that he filed before the court, that he asked the court that he wanted to proceed. He stated that he understood the maximum that he was facing was 60 months. He disagreed with the Kansas being a Class A, or a Grade A violation. But that indicates, all that together indicates that Mr. Walton knew what he was doing, and purposely was choosing to go forward a certain way. And that's information that the court can consider in deciding whether he needs to go through a fuller colloquy with Mr. Walton, and how to proceed from there. Does the court have to methodically tick through Chapter 7 policy statements in considering the applicable 3553 factors, Section 3553 factors? And I submit no. In the previous cases before this court, it's stated that the court doesn't have to methodically tick through the different factors that the court has to consider. In this case, I think it's clear that the judge sentenced the defendant, based on Section 3553, Subsection A to B, and Subsection C. The sentence was made to afford adequate deterrence and protect the public. I think that's something that's easily interpreted from the court's discussion of Mr. Walton. As far as Mr. Walton's self-representation, it would be a very different question that we would be addressing here if this was pretrial. But post-sentencing, the defendant stands in a different place, basically. There's already been a determination that the individual has violated the law, and there's less of a concern that his basic rights are protected. A revocation proceeding is a modification of a previously imposed sentence. It is therefore not a critical stage of the criminal process. And the Supreme Court has declined to state that there is a constitutional right to counsel in a revocation proceeding. That's where Rule 32.1 comes in. And in this case, Mr. Walton was appointed counsel. He was represented by counsel at his initial hearings. And he chose to proceed pro se because he wanted to make the argument that he wanted to make. And I believe that the court did not abuse its discretion in allowing the defendant to represent himself. As far as the third issue, which was whether the court had jurisdiction, I don't believe that, sir, it applies because, sir, it was addressing a case where a defendant was serving a sentence that was impacted by President Obama's grants of clemency. Don't we only have to look at the plain language of the commutation to know that it doesn't apply? Correct. That's my argument. Yes, Your Honor. So unless the court has any other questions. Ms. Conklin, you don't get a chance to come back up, so I want to be fair to you. Make sure you've given me all your arguments in response to Mr. Leary's. And make sure, if you have, then you can say I'm done. I want to make sure, because you don't get to come back. I think fairness is always important. But get it back to the grade A, which you just conceded that he preserved that because he objected to that. Correct? The Kansas, yes, Your Honor. Right, right. So you're familiar with the Campbell case, right? I'm sorry? The Kansas v. Campbell case, agree with that? I believe so, Your Honor. I'm just looking through my notes on my cases. Well, that's okay if you're not. We'll move on. I'll make sure in terms of we're talking about West Virginia because there are two. One is Kansas and West Virginia. It says distribute marijuana under West Virginia law. The question is, is that a controlled substance offense for the purposes of analysis for a grade A violation, right? You have to run that through whether or not you can't say, oh, it's marijuana, it's controlled. No, we have to do that, right? No, Your Honor. Correct. And it has to be something that's punishable by more than a year. Okay. Do you agree that likely, we don't know exactly, likely was West Virginia Code Section 68-4-401, wherein A, stating it's unlawful for any person to manufacture, deliver, or possess with intent to manufacture, deliver, or control a substance. Do you think that very likely was what probably that charge related to? Do you agree with that? The felony, possession with intent to distribute, Your Honor, yes. You agree with that, right? Don't we have to determine whether or not, in fact, in that statute, that vial would qualify, correct? Yes, Your Honor. All right. Now, didn't we say in the sense that that's not necessarily so, because in court we have to do a categorical analysis, right? Don't we have to do that, whether or not it fits categorically? Right? Is that the next step? I believe so, Your Honor. But the question is, is it a felony or a misdemeanor? No, it's more in terms of the question whether or not is that charge itself falls into what is indeed, for the purposes of determining grade A, whether or not it qualifies, right? Yes, Your Honor. All right. So tell me why, under Campbell, we say that West Virginia offense is not a controlled substance offense because it has inchoate-type inclusion. That's why it categorically doesn't match because we have to look at the least culpable offense that could have been charged under that, right? So tell me how it meets the categorical analysis for inclusion. Your Honor, I do not have the West Virginia statute in front of me. I don't have it to look at it and to break it down. That's important, isn't it, because the record, the district court didn't do any of this at all, so we have to do our own homework for that. And when you run through the analysis, if you don't have any response to that, that's fine. I want to make sure I don't want to leave you. So you haven't done that analysis, it turns out, at Campbell. No, Your Honor, but I would also submit to the court. Did the defendant do that analysis? I don't remember seeing that. No, he didn't. On appeal or in the district court. Yeah, but we have to construe the law, don't we? He preserved it. Did he preserve it in the district court or on appeal? I don't believe he preserved that, Your Honor. But you did say he objected to the grade A. Kansas, for the Kansas. Just Kansas. Just Kansas, Your Honor. It was my impression that it was just Kansas, that he was saying the Kansas statute. That's all. But it's still plain, I think this might need plain error. Did he raise it in his appellate brief? No. Like I said, I think it would need plain error. Do we review for plain error things that aren't raised in an appellate brief? I don't believe so, Your Honor. If there are no further questions, I'll go ahead and see the rest of my time. Thank you. I thought I did raise the issue about the grade A.  I didn't specifically talk about Campbell. And whether it qualifies under the federal definition? I just had an oops moment when Judge Gregory was asking her about Campbell. Because I think Campbell would come into play. But you didn't raise that in your brief, did you? I didn't raise specifically Campbell. In your brief, you said this might have been a different West Virginia provision. It could have been just possession. That was your argument. It could have been less than a year. Correct. I just read your brief again because I wanted to make sure I understood what your argument was. You're absolutely correct, Your Honor. That's right. That was the argument. I didn't even think about the Campbell argument. Because as this court has held in Campbell, that that is categorically not a controlled substance offense. Which brings us back to the procedural error, which is this all could have been avoided had the district court in the first instance considered the Chapter 7 policy statement, assessed a violation grade, established the advisory guideline range, and then explained the sentence. If it's not been briefed, if you didn't raise it in your brief and the government did get a chance to respond and not appeal, we're not at liberty to come up with our own interesting questions. Fair enough. I agree. The law is always an interesting subject. I agree. When you raised the question about whether or not you did, you raised the question of whether or not, in fact, this would qualify the West Virginians, right? I did. I don't think you have to cite a specific Supreme Court case necessarily. The whole issue is before it. It's not one of those Simon says situations. You know, you didn't say, got to go back because you didn't say Simon says. The question is about the law, and we construe the law. And you did raise the question, but you didn't say Campbell, but you questioned that. I questioned both grade A violations. That's correct.  You did. With regard to Ms. Conklin's discussion about clicking through the factors, that is correct, and this court has held that, that there's not a high standard for the district court to explain the sentence that it imposed. It doesn't have to get into a lengthy discussion as to why. It only has to acknowledge these were the reasons so that it can be appropriate appellate court review. The court in this case didn't do any of that. So I would submit it's not procedurally reasonable for that reason. And I'd be happy to answer any other questions. That was the only thing I wanted to bring up on rebuttal. All right. Thank you. Thank you.  We'll ask the clerk to adjourn the court. Sunny Dye will come down and recount. This honorable court stands adjourned. Sunny Dye. God save the United States and this honorable court.
judges: Roger L. Gregory, Stephanie D. Thacker, Allison J. Rushing